IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ZACHERY ALEXANDER | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| HEALTH SCIENCE CENTER | § | |
| AND MARCIS & ASSOCIATES, INC. | § | |
|     Defendants | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Zachery Alexander ("Plaintiff"), Plaintiff in the above styled and numbered cause, and files this Original Complaint, complaining of Defendants University of Texas Health Science Center ("UTHSC") and Marcis & Associates, Inc. ("Marcis") (collectively "Defendants"), and for cause of action would show as follows:

## I.
## INTRODUCTION

1.      This action seeks equitable relief, compensatory and punitive damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for race discrimination, sex discrimination and retaliation suffered by Plaintiff in the course of his joint employment with Defendant UTHSC in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, the Texas Commission on Human Rights Act ("TCHRA"), as codified in the Texas Labor Code §21.001, *et. seq.* and the common law of the State of Texas.

2.     This action also seeks equitable relief, compensatory and punitive damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for race discrimination and retaliation suffered by Plaintiff in the course of his joint employment with Defendant Marcis in violation of 42 U.S.C. § 1981.

3.     Plaintiff complains that he was discriminated against (including termination) because of his race and sex, suffered retaliation (including termination), and was subjected to different terms and conditions of employment than non-black employees

4.     Plaintiff demands a jury on all issues triable to a jury.

## II.
## PARTIES

5.     Plaintiff Zachery Alexander is a Black, African-American male, and a resident of Houston, Harris County, Texas.

6.     Defendant University of Texas Health Science Center ("UTHSC") is a component of The University of Texas System and the University of Texas.  UTHSC may be served with process herein by serving its President, Dr. James T. Willerson, The University of Texas Health Science Center at Houston, 7000 Fannin, Suite 1200, Houston, Texas 77030, or the Board of Regents of the University of Texas System, 201 W. 7th St., Austin, Texas 78701.

7.     Defendant Marcis & Associates, Inc. is a Domestic Corporation duly authorized to do business in the State of Texas.  Service of the Summons and this

Complaint may be made by serving Defendant's registered agent, Thomas A. Adams, III, 722 Pin Oak Road, Suite 202, Katy, Texas 77494.

8.     Whenever in this petition it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

### III.
### JURISDICTION

9.     This is a civil action over which this court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

10.     The Court has personal jurisdiction over the Defendants since their principal place of business is Texas, and therefore they has minimum contacts with the State of Texas.

11.     Moreover, the acts Plaintiff complains of occurred within the State of Texas.

12.     Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b) since the substantial part of the events or omissions giving rise to this cause of action occurred in the Southern District of Texas.

13.     Venue is proper in the Southern District of Texas since Plaintiff was employed at Defendant UTHSC's facilities located in Houston, Harris County, Texas.

14.     The amount in controversy is within the jurisdictional limits of this Court.

15.     This Court has jurisdiction over all claims in this action.

16.     All conditions precedent to filing this cause of action have been met.

## IV.
## PROCEDURAL REQUISITES

17.     Plaintiff filed a charge of race and sex discrimination and harassment against Defendant UTHSC under Charge Number 460-200+6-01012 with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division on or about March 7, 2006.

18.     On or after December 8, 2007, the EEOC issued a Notice of Right to Sue letter entitling Plaintiff to file an action in this Court for his claims against UTHSC.

19.     The filing of this lawsuit against UTHSC has been accomplished within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter.

20.     Plaintiff has not yet received a right to sue letter from the EEOC concerning his Title VII claims against Marcis.

## V.
## FACTS

21.     Plaintiff is a joint employee of Defendants.

22.     Plaintiff is an employee of Defendant UTHSC.

23.     Plaintiff is an employee of Defendant Marcis.

24.     Plaintiff was employed in the housekeeping department.

25.    Plaintiff worked the second shift which began at 3:30 p.m.

26.    Carmen Carillo was Plaintiff's supervisor until February 26, 2006.

27.    Carmen Carillo is an employee of Defendant Marcis.

28.    Plaintiff was qualified for the position he held during all time relevant to the incidents made the basis of this suit

29.    Plaintiff was subject to discrimination by Defendant because of his race, Black.

30.    Plaintiff was subjected to different terms and conditions of employment because of his race, Black.

31.    During his employment with Defendants, Plaintiff was subjected to frequent and unwelcome racial comments and slurs directed at him because of his race, Black.

32.    These frequent and unwelcome racial comments and slurs were said by supervisors and co-workers.

33.    Plaintiff was also subjected to continuous racial harassment by employees of Defendants during his employment.

34.    Plaintiff was not afforded the same terms and conditions of his employment as similarly situated non-Black employees.

35.    On January 13, 2006, Plaintiff overheard a conversation between Carmen Carillo and Zoila Gongora ("Gongora") ("January 13, 2006 conversation").

36.    The January 13, 2006 conversation took place in a room off a hallway used by Plaintiff and his co-workers when they checked in at the start of their shifts.

37.    The January 13, 2006 conversation took place shortly before 3:30 p.m.

38.    The participants in the January 13, 2006 conversation had not closed the door to the room.

39.    The participants in the January 13, 2006 conversation were speaking loud enough so that anyone walking down that hallway could clearly hear the conversation.

40.    During the January 13, 2006 conversation, Carillo stated that Plaintiff had not agreed to come in to work on his day off.

41.    During the January 13, 2006 conversation, Carillo stated that Black were "lazy."

42.    During the January 13, 2006 conversation, Carillo stated that Marcis did not like to hire Blacks.

43.    During the January 13, 2006 conversation, Carillo stated that Marcis did not like to hire Blacks because they were lazy.

44.    On January 13, 2006, when Plaintiff entered the housekeeping office, a stuffed plush toy, a black monkey ("black monkey"), was clearly visible on the top of the refrigerator.

45.    On January 13, 2006, the black monkey was positioned so that its long tail came forward between its legs, imitating an erect penis.

46.    When a Black individual is called a "monkey" it is a racial slur.

47.    The black monkey and its position was offensive.

48.    On January 13, 2006, Plaintiff took a picture of the black monkey.

49.    On January 13, 2006, Plaintiff removed the black monkey from the top of the refrigerator and placed it inside a cabinet in the office.

50.    On January 13, 2006, Plaintiff spoke to Mary Johnson ("Johnson"), UTHSC staff operator.

51.    On January 13, 2006, Plaintiff complained about the monkey to Johnson.

52.    On January 13, 2006, Plaintiff complained about the comments made by Carillo to Gongora in the January 13, 2006 conversation.

53.    On January 13, 2006, Johnson advised Plaintiff to document the incidents of January 13, 2006.

54.    On January 13, 2006, Johnson advised Plaintiff to document any further incidents of harassment.

55.    No one was reprimanded, counseled, warned or in any way punished for the January 13, 2006 incident.

56.    On January 16, 2006, Plaintiff again found the black monkey in the housekeeping office on the coat rack hanging by its neck.

57.    On January 16, 2006, Plaintiff took a picture of the black monkey hanging from the coat rack.

58.    On January 16, 2006, Plaintiff removed the black monkey from the hat rack.

59.    On January 16, 2006, Plaintiff again placed the black monkey in a cabinet in the housekeeping office.

60.     On January 16, 2006, Plaintiff notified Carillo that the black monkey was offensive.

61.     On January 16, 2006, Plaintiff notified supervisors employed by Marcis that the black monkey was offensive.

62.     No one was reprimanded, counseled, warned or in any way punished for this January 16, 2006 incident.

63.     On January 16, 2006, Plaintiff sent a written complaint about the incidents of January 13 and 16, 3006 to Patricia Stone ("Stone"), UT manager over facilities management.

64.     Stone did not respond to Plaintiff's January 16, 2006 complaint.

65.     On January 16, 2006, a memo in Spanish was posted in the housekeeping office ("January 16, 2006 memo").

66.     On January 16, 2006, no corresponding memo in English was posted in the housekeeping office.

67.     On January 16, 2006, Plaintiff asked Carillo for a translation of the January 16, 2006 memo said.

68.     On January 16, 2006, Carillo told Plaintiff the January 16, 2006 memo was not important and he did not need to worry about it.

69.     On January 16, 20006, Carillo did not provide Plaintiff with a translation of the contents of the January 16, 2006 memo.

70.     On January 16, 2006, Plaintiff asked supervisors employed by Marcis for a translation of the January 16, 2006 memo.

8

71.    On January 16, 2006, supervisors employed by Marcis told Plaintiff the January 16, 2006 memo was not important and he did not need to worry about it.

72.    On January 16, 20006, supervisors employed by Marcis did not provide Plaintiff with a translation of the contents of the January 16, 2006 memo.

73.    On January 16, 2006, Plaintiff asked his co-workers for a translation of the January 16, 2006 memo.

74.    On January 16, 2006, Plaintiff's co-workers told Plaintiff the January 16, 2006 memo was not important and he did not need to worry about it.

75.    On January 16, 2006, Plaintiff's co-workers did not provide Plaintiff with a translation of the contents of the January 16, 2006 memo.

76.    The January 16, 2006 memo concerned insurance benefits.

77.    The January 16, 2006 memo notified the employees of the date and time of a meeting with Aflac.

78.    The January 16, 2006 memo notified the employees that if they were interested in discussing Aflac insurance, they needed to attend the meeting.

79.    The January 16, 2006 memo stated that Aflac would hold a seminar for the staff of Marcis about insurance and health benefits.

80.    Plaintiff was eligible to participate in the Aflac seminar.

81.    Plaintiff was eligible to obtain coverage through Aflac.

82.    No Black employees of Marcis who worked the second shift attended the Aflac seminar.

83.     Marcis did not provide to its English speaking employees, notification in English of the Aflac seminar.

84.     Plaintiff did not learn of the Aflac seminar or of the contents of the January 16, 2006 memo until after the Aflac seminar.

85.     Plaintiff was denied the opportunity to participate in benefits provided by Aflac.

86.     Marcis intentionally denied Plaintiff the opportunity to participate in benefits provided by Aflac.

87.     No one was reprimanded, counseled, warned or in any way punished for this January 16, 2006 incident concerning Aflac.

88.     On January 17, 2006, when Plaintiff arrived at work the black monkey was again hanging by its neck on the coat rack.

89.     When Plaintiff arrived at work on January 17, 2006, Carillo was in the housekeeping office.

90.     When Plaintiff arrived at work on January 17, 2006, approximately four co-workers were in the housekeeping office.

91.     On January 17, 2006, Plaintiff informed Carillo that the black money was racially offensive.

92.     On January 17, 2006, Plaintiff informed several co-workers that the black money was racially offensive.

93.     On January 17, 2006, Plaintiff informed Carillo that Plaintiff did not approve of any racial jokes, including the black monkey.

94.    On January 17, 2006, Plaintiff informed several co-workers that Plaintiff did not approve of any racial jokes, including the black monkey.

95.    On January 17, 2006, in front of Carillo and several co-workers, Plaintiff removed the black monkey from the coat rack.

96.    On January 17, 2006, in front of Carillo and several co-workers, Plaintiff placed the black monkey inside a cabinet in the housekeeping office.

97.    On January 17, 2006, after placing the black monkey inside a cabinet, Plaintiff started his rounds.

98.    No one was reprimanded, counseled, warned or in any way punished for this January 17, 2006 incident.

99.    On January 17, 2006, Plaintiff returned to the housekeeping office at about 4:00 p.m.

100.    As Plaintiff approached the housekeeping office at about 4:00 p.m. on January 17, 2006, he heard several people laughing within the office.

101.    When Plaintiff entered the housekeeping office at about 4:00 p.m. on January 17, 2006, the people inside left the office.

102.    On January 17, 2006 at about 4:00 p.m., Plaintiff found the black monkey hanging from a rope around its neck from the ceiling.

103.    On January 17, 2006 at about 4:00 p.m., Plaintiff found a note in Spanish pinned on the black monkey.

104.    On January 17, 2006 at about 4:00 p.m., Plaintiff took a picture of the black monkey and the note.

105.    On January 17, 2006 at about 4:00 p.m., Plaintiff went to Stone's office and complained about the recent events.

106.    On January 17, 2006, Stone went to the housekeeping office and saw the black monkey hanging from the ceiling.

107.    On January 17, 2006, Stone saw the note in Spanish pinned to the black monkey.

108.    On January 17, 2006, Stone removed the black monkey from the housekeeping office.

109.    On January 17, 2006, Stone gave the black monkey to Raudel Villaneda ("Villaneda"), UTHSC's Director of Facilities Management.

110.    On January 17, 2006, a meeting was held with Stone, Villaneda and Rodolfo Morales ("Morales"), Housekeeping Manager for Marcis, to discuss the racially harassing incidents ("January 17, 2006 meeting").

111.    On January 17, 2006, the note pinned to the black monkey was translated as "Sorry I didn't get a chance to say goodbye, see you on the other side."

112.    The participants in the January 17, 2006 meeting then met with Carillo.

113.    On January 17, 2006, Carillo admitted to Stone and Morales that she had made the comment that Blacks were lazy.

114.    On January 17, 2006, Carillo admitted to Stone and Morales that while she had not hung the black monkey, she knew who was responsible.

115.    No action was ever taken against the individual who was responsible for hanging the black monkey.

116.    No one was reprimanded, counseled, warned or in any way punished for this January 17, 2006 incident.

117.    On January 17, 2006, no action was taken against Carillo for her racially offensive comments and for allowing racially offensive conduct to continue.

118.    After the January 17, 2006 meeting, Plaintiff returned to work and completed his shift.

119.    When Plaintiff left work on January 17, 2006, he emptied all the trash from his housekeeping cart and left it ready to begin his next shift.

120.    Plaintiff was off work on January 18, 2006.

121.    On January 19, 2006, Plaintiff arrived at work and found that his housekeeping cart has been trashed.

122.    On January 19, 2006, Plaintiff arrived at work and found that his supplies had been scattered throughout the building.

123.    On January 19, 2006, Plaintiff arrived at work and found his trash bags had been filled and left on his cleaning cart.

124.    On January 19, 2006, Plaintiff had to retrieve his cleaning supplies and clean his cart before he could begin work.

125.    On January 19, 2006, Carillo knew of this harassing behavior.

126.    On January 19, 2006, Carillo knew that Plaintiff's housekeeping cart had been trashed on January 19, 2006.

127.    No one was reprimanded, counseled, warned or in any way punished for the January 19, 2006 incident.

128.    On January 20, 2006, Plaintiff arrived at work and heard laughter in the housekeeping office.

129.    On January 20, 2006, when Plaintiff entered the housekeeping office, the other employees left, laughing as they did so.

130.    On January 20, 2006, Plaintiff arrived at work and found that his housekeeping cart has been trashed.

131.    On January 20, 2006, Plaintiff arrived at work and found that his supplies had been scattered throughout the building.

132.    On January 20, 2006, Plaintiff arrived at work and found that his mop bucket was full of dirty warty and dirty mops had been left on his cart.

133.    On January 20, 2006, Plaintiff arrived at work and found that filled trash bags had been attached to his housekeeping cart.

134.    On January 20, 2006, Plaintiff had to retrieve his cleaning supplies and clean his cart before he could begin work.

135.    On January 20, 2006, Carillo knew of this harassing behavior.

136.    On January 20, 2006, Carillo knew that Plaintiff's housekeeping cart had been trashed on January 20, 2006.

137.    No one was reprimanded, counseled, warned or in any way punished for the January 20, 2006 incident.

138.    On January 21, 2006, Plaintiff arrived at work and found that his housekeeping cart has been trashed.

139.   On January 21, 2006, Plaintiff arrived at work and found that his supplies had been scattered throughout the building.

140.   On January 21, 2006, Plaintiff arrived at work and found his trash bags had been filled and left on his cleaning cart.

141.   On January 21, 2006, Plaintiff had to retrieve his cleaning supplies and clean his cart before he could begin work.

142.   On January 21, 2006, Carillo knew of this harassing behavior.

143.   On January 21, 2006, Carillo knew that Plaintiff's housekeeping cart had been trashed on January 21, 2006.

144.   No one was reprimanded, counseled, warned or in any way punished for the January 21, 2006 incident.

145.   On January 23, 2006, when Plaintiff arrived at work and found his housekeeping cart had again be trashed, he asked Carillo for her assistance to get his cart back in order to begin work.

146.   On January 23, 2006, Carillo refused Plaintiff's request for supplies.

147.   On January 23, 2006, Carillo did not assist Plaintiff in his efforts to get his cart back in order to begin work.

148.   No one was reprimanded, counseled, warned or in any way punished for the January 23, 2006 incident.

149.   On February 5, 2006, Plaintiff was detained and had his backpack searched by two UTHSC police officers.

150.    On February 5, 2006, the police officers were looking for a Black man with a backpack who worked in the dietary section.

151.    On February 5, 2006, Plaintiff was wearing his staff badge that identified his department as housekeeping.

152.    On February 5, 2006, Stone saw Plaintiff in the Courtyard walking to the bus stop and called the police officers to detain him.

153.    Stone later told Plaintiff that she realized he was not the one they were looking for when the police officers escorted him back to the Courtyard.

154.    Stone made no attempt to notify the police officers that they had the wrong individual but instead watched while Plaintiff and his belongings were searched.

155.    The February 5, 2006 search of Plaintiff occurred in a courtyard that could be easily viewed by anyone looking out of numerous windows on that side of the building.

156.    Stone watched the search of Plaintiff from a window on the first floor located close to the door leading out to the courtyard.

157.    Throughout Plaintiff's employment, he has been called "mayate" by Carillo and his Hispanic co-workers.

158.    "Mayate" is a derogatory slang term in Spanish for Blacks.

159.    On or about February 26, 2006, Plaintiff was notified that Gongora was being promoted to acting shift supervisor beginning February 27, 2006.

160.    On February 27, 2006, Plaintiff and Beverly Watson ("Watson"), a co-worker, were in the housekeeping office programming Watson's cell phone.

16

161.    Beverly Watson is a Black female.

162.    Plaintiff and Watson are the only two Black employees working in housekeeping on the second shift on February 27, 2006.

163.    On February 27, 2006, Plaintiff and Watson stopped working on Watson's phone before they clocked in to begin their shift.

164.    Shortly after Plaintiff started his shift on February 27, 2006, Plaintiff was given a written warning by Gongora for "working on personal matters" and "not working talking on cell phone."

165.    The time of the incident is listed as 3:30 p.m. on Plaintiff's February 27, 2006 Employee Warning Notice.

166.    On February 27, 2006, Watson was given a similar written warning by Gongora.

167.    The February 27, 2006 warnings were for Plaintiff and Watson programming Watson's cell phone before they clocked in for work.

168.    No non-Black employee has ever been given a written warning for working on personal matters in the housekeeping office before they clock in to begin their shift.

169.    February 27, 2006 was Gongora's first day as acting shift supervisor for Defendant Marcis.

170.    Gongora does not have sufficient language skills to provide information and instructions in English to the non-Spanish speaking employees.

171.   Shortly after Plaintiff received the written warning, he complained to Stone.

172.   Stone's comment to Plaintiff in response to his complaint about the February 27, 2006 was to tell him that he was "ignorant" and he should stop pursuing his claims.

173.   On March 10, 2006, Plaintiff arrived at the housekeeping office to find his co-workers circulating a sheet of paper containing the names and pay rates of the Marcis employees.

174.   On March 10, 2006, Plaintiff was not responsible for the disclosure of this information to the housekeeping staff.

175.   On March 10, 2006, Plaintiff made a copy of the document and wrote a note on it to Morales, notifying him of the disclosure of the document.

176.   Plaintiff did not retain a copy of the document.

177.   Plaintiff was the only person to notify Morales of the improper disclosure of the pay rate information.

178.   On March 10, 2006, Plaintiff was terminated by Morales.

179.   On March 10, 2006, the reason Morales gave for Plaintiff's termination was that Plaintiff had made a copy of the pay rate sheet.

180.   No one, except Plaintiff, was reprimanded, counseled, warned or in any way punished for the March 10, 2006 unauthorized disclosure of pay rate information.

181.   The alleged reason given by Morales for Plaintiff's termination is false.

182.    Plaintiff filed his charge of discrimination against Marcis with the EEOC on March 7, 2006.

183.    Marcis had received notification from the EEOC of Plaintiff's charge by March 10, 2006.

184.    After Plaintiff' termination, an Hispanic was hired to replace Plaintiff.

185.    From March 10, 2006 to March 1, 2007, Marcis has not hired any Black employee to work on the housekeeping second shift.

186.    Plaintiff was subjected to racial slurs made by his supervisor, Carillo.

187.    Plaintiff reported the racial harassment and slurs to Defendants.

188.    Prior to Plaintiff's first complaints about discrimination and a hostile work environment, Plaintiff has never previously been counseled, written up or reprimanded.

189.    Defendants never responded to Plaintiff's complaints.

190.    Defendants never took any action to stop the discrimination and harassment.

191.    Defendants have a pattern and practice of discriminating against Black employees.

192.    Defendants have a pattern and practice of racial harassment against Black employees.

193.    Plaintiff was subjected to unequal treatment while employed with Defendants because of his race and/or color, Black.

194.    While Plaintiff was employed by Defendants, he was one of only two Black employees on his shift, supervised by Carillo

## VI.
## DISCRIMINATION ON THE BASIS OF RACE

195.    Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

196.    Plaintiff is Black, African American.

197.    By the above-described acts, Defendant UTHSC discriminated against Plaintiff because of his race by discriminating against him with respect to terms, conditions and privileges of his employment through denial of his employment rights, benefits, promotions and achievement, including termination of his employment, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, Chapter 21, Section 21.110 of the Texas Labor Code.

198.    Defendant UTHSC acted with malice or, in the alternative, with reckless indifference to the state and federally protected rights of Plaintiff.

199.    Defendant UTHSC acted with malice or, in the alternative, with reckless indifference to the rights of Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

200.    As a result of Defendant UTHSC's discriminatory actions, Plaintiff has suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

## VII.
## RACE DISCRIMINATION
## UNDER TITLE VII AND 42 U.S.C. §1981

201.   Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

202.   Plaintiff's race is Black, African American, a protected group that the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981, 42 U.S.C. § 1981a and Chapter 21 of the Texas Labor Code intended to protect.

203.   As such, Plaintiff is a member of an ethnic group which is, and is commonly perceived as being, ethnically and physiognomically distinct.

204.   At all relevant times, Plaintiff was qualified for the positions he held during his employment by Defendants.

205.   Defendants discriminated against Plaintiff because of his race.

206.   Defendants subjected Plaintiff to harassment because of his race.

207.   Defendants terminated Plaintiff because of his race.

208.   Defendants terminated Plaintiff in retaliation for engaging in a protected activity

209.   Defendants terminated Plaintiff in retaliation for engaging in a protected activity - complaining about discrimination.

210.   Defendants terminated Plaintiff in retaliation for engaging in a protected activity - complaining about a hostile work environment.

211.    Defendants terminated Plaintiff in retaliation for engaging in a protected activity - filing of a charge of discrimination with the EEOC.

212.    Defendants subjected Plaintiff to different terms, conditions and privileges of employment because of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981, 42 U.S.C. § 1981a and Chapter 21 of the Texas Labor Code, for which Plaintiff requests compensatory and punitive damages.

213.    Defendants have a pattern and practice of discriminating against Black employees by subjecting them to different terms and conditions of employment than non-Black employees.

214.    By the above-described acts, Defendants discriminated against Plaintiff because of race and color by tolerating and failing to take affirmative action to correct these unlawful employment practices, by discriminating against him with respect to the terms, conditions and privileges of his employment because of his race, and through denial of his employment rights and benefits, promotions and achievements, and by terminating him all in violation of 42 U.S.C. § 1981a, and 42 U.S.C. § 1981.

215.    Plaintiff was also harassed and subjected to different terms, conditions and privileges of employment because of his race and/or color, including termination, in violation of 42 U.S.C. § 1981.

216.    Further, Defendants acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Plaintiff.

217.    As a result of Defendants' discriminatory and retaliatory actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

218.    Plaintiff requests compensatory damages.

## VIII.
## HOSTILE WORK ENVIRONMENT

219.    Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

220.    Plaintiff was subjected to a hostile environment.

221.    Defendants' conduct created an environment that a reasonable person would find hostile and abusive.

222.    The racial harassment was pervasive and severe and altered the conditions of Plaintiff's employment and created an abusive working environment.

223.    Defendants knew of the harassment.

224.    Defendants knew of the hostile work environment.

225.    Defendants' harassment was sufficiently pervasive to alter the conditions of Plaintiff's employment and create a working environment which was intimidating, insulting, and abusive to the reasonable person in Plaintiff's position.

226.    Defendants' acts and omissions constituted an offensive work environment as that term is known under well-established federal case law.

227.   Defendants' continued harassment of Plaintiff, despite competent and diligent performance by Plaintiff, constitutes race and color discrimination in violation of federal and state statutes.

228.   Further, Defendants acted with malice, or, in the alternative, with reckless indifference to the statutorily protected rights of the Plaintiffs.

229.   Defendants' harassment was severe, outrageous, and caused emotional trauma to Plaintiff.

230.   The racial harassment was pervasive and severe and altered the conditions of Plaintiff's employment.

231.   During Plaintiff's employment, Defendants' conduct was extreme and outrageous and went beyond all bounds of decency.

232.   Defendant's conduct was atrocious and utterly intolerable in a civilized community.

233.   The racial harassment created an abusive working environment.

234.   Defendants were made aware of the racial harassment beginning in approximately January 13, 2006.

235.   Defendants failed to take prompt remedial action and are thus liable for the racial discrimination and harassment.

236.   Defendant UTHSC failed to follow its policy against harassment during the incidents made the basis of this suit.

237.   Defendants are liable for intentional infliction of emotional distress.

238.    Defendants are liable for intentional infliction of emotional distress from the time that Plaintiff first notified Defendants.

239.    As a result of Defendant's actions as stated above, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

## IX.
## RETALIATION

240.    Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

224.    After Plaintiff complained about the discrimination and harassment, Defendant UTHSC engaged in activities in retaliation for his complaints as outlined above in violation of Title VII and the Texas Labor Code, including but not limited to 42 U.S.C. 2000e-3(a) and § 21.055 of the Texas Labor Code.

241.    After Plaintiff complained to Defendant UTHSC's management about the discrimination and harassment, Defendant UTHSC engaged in activities, including termination, in retaliation for his complaints as outlined above in violation of Title VII and the Texas Labor Code, including but not limited to 42 U.S.C. 2000e-3(a) and § 21.055 of the Texas Labor Code.

242.    After Plaintiff filed his initial Charge of Discrimination with the EEOC, Defendant UTHSC engaged in activities in retaliation, including termination, for Plaintiff's complaints as outlined above in violation of Title VII, 42 U.S.C. § 1981, and

the Texas Labor Code, including but not limited to 42 U.S.C. 2000e-3(a) and § 21.055 of the Texas Labor Code.

243.   Further, Defendant UTHSC acted with malice or, in the alternative, with reckless indifference to the federally protected rights of the Plaintiff.

244.   As a result of Defendant UTHSC's retaliatory actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer these damages in the future.

## X.
## DAMAGES

245.   Each and every allegation contained in the foregoing paragraphs are realleged as if fully rewritten herein.

246.   Plaintiff has lost compensation and benefits from the date of his termination through the date of trial, for which he seeks as back pay.

247.    In addition, Plaintiff demands front pay, including but not limited to any and all differential between his pay, including benefits, with current and/or future employers, or reinstatement.

248.   Plaintiff also has suffered emotional distress and mental anguish as a result of Defendants' conduct and seeks renumeration for same.

249.   Plaintiff further seeks punitive and/or liquidated damages for Defendants' willful, malicious, intentional, and/or reckless discrimination and retaliation.

250.    Plaintiff demands attorney's fees, expert witness fees, pre-judgment and post-judgment interest, and costs of court as allowed in Title VII,  42 U.S.C. § 1981, and the laws of the state of Texas.

## XI.
## ATTORNEY'S FEES

251.    In addition, as a result of the acts and omissions of Defendant, as specifically set forth herein, it was necessary for Plaintiff to secure counsel to present and prosecute this matter on his behalf.

252.    Plaintiff has retained the services of the undersigned counsel of record, and accordingly, Plaintiff sues for reasonable attorneys' fees as provided under Title VII, 42 U.S.C. § 1981, the TCHRA, and any other relevant statutes.

## XII.
## JURY DEMAND

253.    Plaintiff requests a trial by jury on all issues triable by a jury in this case.

## XIII.
## RELIEF REQUESTED

254.    Plaintiff respectfully prays that he be granted judgment for the following relief:

a.    For actual and liquidated damages for the period of time provided by law, including appropriate backpay and reimbursement for lost pension, insurance, and all other benefits;

b.    Reinstatement or for front pay, including benefits, in lieu of reinstatement;

c.     For compensatory damages and punitive damages as allowed by law;

d.     For attorneys' fees;

e.     For expert witness fees incurred by Plaintiff in the preparation and prosecution of this action;

f.     For pre-judgement and post-judgement interest as allowed by law;

g.     For costs of court, costs of prosecuting Plaintiff's claim; and

h.     For such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

AHMAD, ZAVITSANOS & ANAIPAKOS, P.C.

By:     /s/   Joseph Y. Ahmad
         Joseph Y. Ahmad
         State Bar No. 00941100
         joeahmad@azalaw.com
         3460 Houston Center
         1221 McKinney Street
         Houston, Texas  77010
         Telephone:   (713) 655-1101
         Telecopier:   (713) 655-0062

Of counsel:

> Christopher Leonard
> State Bar No. 24035075
> The Law Office of Christopher Leonard
> 6207 Culberson Street
> Houston, Texas 77021
> Telephone:   (713) 741-4565
> Telecopier:   (713) 748-7261

ATTORNEYS FOR PLAINTIFF
ZACHERY ALEXANDER

## NOTICE OF ELECTRONIC FILING

I, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing document in accordance with the Electronic Case Filing System of the U.S. District Court for the Southern District of Texas, on this the 8th day of March, 2007.

      /s/   Joseph Y. Ahmad
Joseph Y. Ahmad